JUDGE CASTEL

'08 CIV 6914

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TIANJIN DEVELOPMENT AREA CHANG
MING SHIPPING CO. LTD. and CHINA SHIPPING
INTERNATIONAL TRADING CO. LTD.,

Plaintiffs,

- against -

AMERICAN BUREAU OF SHIPPING,

Defendant.

------------------------------------------------------------X



08 CIV. ____

AUG 01 2008

U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT**

Plaintiffs, Tianjin Development Area Chang Ming Shipping Co. Ltd. ("Tianjin Shipping") and China Shipping International Trading Co. Ltd. ("China Shipping"), by their attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against defendant, American Bureau of Shipping ("ABS"), allege as follows:

<b><u>THE PARTIES</u></b>

1.      Plaintiff Tianjin Shipping was and is a foreign corporation and/or other business entity duly organized under and existing by virtue of the law of the People's Republic of China, with an office and principal place of business in Tianjin, China.

2.      Plaintiff China Shipping was and is a foreign corporation and/or other business entity duly organized under and existing by virtue of the law of the People's Republic of China, with an office and principal place of business in Shanghai, China.

3.      Defendant ABS is a not-for-profit corporation duly organized under and existing by virtue of the laws of the State of New York with its principal place of business

in Houston, Texas, and with an office and place of business at 45 Broadway, New York, New York 10006-3007.

## JURISDICTION

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship among and between plaintiffs and defendant and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## VENUE

5.    Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a) in that the defendant resides in the Judicial District of this Court, or a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District, or the defendant is subject to personal jurisdiction within this Judicial District.

## FACTS

6.    Plaintiffs Tianjin Shipping and China Shipping entered into a Memorandum of Agreement, dated November 11, 2004, for the purchase of the vessel M/V NORSUL AMAZONAS from Companhia de Navegacao Norsul, for the purchase price of USD 16,800,000.00.

7.    The Memorandum of Agreement provided, in relevant part:

5.    Notices, time and place of delivery

a)    The Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall provide the Buyers with 20, 15, 7, and 5 days approximate notice and 3/2/1 days more definite notice of the estimated time of arrival at the intended place of drydocking/underwater inspection/delivery when they expect to tender Notice of Readiness.  Such Notice of Readiness shall be valid only When when the Vessel is at the place of delivery and

2

fully ~~in every respect~~ physically and documentally ready for delivery in accordance with this Agreement. ~~the Sellers shall give the Buyer a written Notice of Readiness for delivery.~~

The Buyers shall take delivery of the Vessel within 3 banking days after such Notice of Readiness tendered.

b)    The Vessel shall be delivered and taken over charter free, free of stowaways, safely afloat at a safe and accessible berth or safe anchorage or drydock In Sellers' option at/in Jingtang, China ~~in the Sellers' option.~~

Expected time of delivery between 1st August 2005 and 30th September, 2005 in Sellers' option
Date of canceling (see <u>Clauses 5 a)</u>, <u>6 b) (iii)</u> and <u>14</u>): 30th September, 2005 in Buyers' option.

5.    Drydocking/Divers Inspection

~~a)    The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the Classification Society of the Vessel's underwater parts below the deepest load line, the extent of the inspection being in accordance with the Classification Society's rules.  If the Rudder, propeller, bottom or other underwater parts below the deepest load linen are found Broken, damaged or defective so as to affect the Vessel's class, such defects shall be made good at the Sellers' expense to the satisfaction of the Classification Society without condition/recommendation.~~

b)    (i)    The Vessel is to be delivered without drydocking. However, the Buyers shall have the right at their expense to arrange for an underwater inspection by a diver approved by the Classification Society prior to the delivery of the Vessel.  The Sellers shall at their cost make the Vessel available for such inspection.  The extent of the inspection and the conditions under which it is performed shall be to the satisfaction of the Classification Society.  If the conditions at the port of delivery are unsuitable for such inspection, the Sellers shall make the Vessel available at a suitable alternative place near to the delivery port.

(ii)    If the rudder, propeller, bottom or other underwater parts below the deepest load line are found broken, damaged or defective so as to affect the Vessel's class, then unless Repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers shall arrange for the Vessel to be drydocked at their expense for inspection by the Classification Society of the Vessel's underwater parts below the deepest load line, the extent of

the inspection being in accordance with the Classification Society's rules. If the Rudder, propeller, bottom or other underwater parts below the deepest load line are found Broken, damaged or defective so as to affect the Vessel's class, such defects shall be made good by the Sellers at their expense to the satisfaction of the Classification Society without condition/recommendation. In such event the Sellers are to pay also for the cost of the underwater inspection and the Classification Society's attendance.

Should damage(s) be found to the underwater parts which affects the Vessel's clean certificate of Class, but which in the opinion of the Class surveyor present does not require drydocking prior to the next scheduled drydocking of the Vessel, the Sellers and Buyers to apply to two reputable shiprepairers in China, one to be selected by the Buyers and one to be selected by the Sellers, in order to obtain quotations for the direct cost of repair to the said damage(s) only. Thereafter it shall be in Sellers option whether to repair said damage(s) prior to delivery, or to deliver the Vessel with the said damage(s), against a reduction in the Purchase Price of the cost of repairs, which to be defined as the average of the two quotations obtained.

The Classification Society shall be the sole arbitrator as to whether any damage found may constitute a condition/recommendation.

* * *

8.    Documentation

The place of closing: in the offices of HSBC Shipping Finance Division, 1 Queen's Road Central in Hong Kong. The cost of holding the closing at HSBC Shipping Finance Division, 1 Queen's Road Central, Hong Kong to be equally shared between the Sellers and the Buyers.

At time of delivery the Seller to furnish the Buyers with the below listed documents in English version or with official translation in English.

Copies of proforma of same to be sent or faxed to the Buyers at least 10 (ten) banking days prior to the expected date of delivery except items B, G, H and L which to be sent of faxed soonest after the Sellers have obtained same.

* * *

4

H)    Original Class maintained certificate from the Vessel's Classification Society stating that the Vessel is Class maintained. This certificate should be dated maximum not more than 3 (three) banking days prior to delivery. This document to be presented by electronic file or by fax. Original to be sent by courier.

\* \* \*

11.    Condition on delivery

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be delivered and taken over in substantially the same condition as she was at the time of inspection, fair wear and tear excepted.

However, the Vessel shall be delivered with her present class maintained without extensions, free of condition/recommendation, and free of average damage affecting the Vessel's class, and with her classification and trading certificates *and* national and international trading certificates, as well as all other certificates the Vessel had at the time of inspection, valid and unextended without condition/recommendation by Class or the relevant authorities at the time of delivery.

However,    in    case    the    Class    impose    a condition(s)/recommendation(s) at a time close to the time of delivery and Sellers do not have sufficient time to repair said damage prior to the cancelling date the Buyers shall accept delivery with such condition(s)/recommendation(s) against a reduction in the Purchase Price in the amount equivalent to the direct cost of such repairs which costs shall be determined to be the average of the estimates of two qualified repair yards in China, each such yard to be selected by each party. Such settlement shall be based on both general expenses directly related to the repairs of above condition(s)/recommendation(s) an the direct cost of repairs only.

Sellers shall provide Buyers with a class maintained certificate dated maximum 3 days prior to delivery by fax at the time of tendering Notice of Readiness.

\* \* \*

14.    Sellers' default

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have the

option of cancelling this Agreement provided always that the Sellers shall be granted a maximum of 3 banking days after Notice of Readiness has been given to make arrangements for the documentation set out in Clause 8. If after Notice of Readiness has been given but before the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not made physically ready again in every respect by the date stipulated in line 61 and new Notice of Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect to cancel this Agreement the deposits mentioned in lines 18 and 24 herein together with interest, if any, earned shall be released to them immediately.

Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for their loss and for all expenses together with interest if their failure is due to proven negligence and whether or not the Buyers cancel this Agreement.

8.      The M/V NORSUL AMAZONAS arrived at anchorage at Jingtang, China, the place of delivery as agreed upon in the Memorandum of Agreement, on August 1, 2005.

9.      Thereafter, in accordance with the express terms of the Memorandum of Agreement, Companhia de Navegacao Norsul arranged with ABS for the underwater diver inspection and/or the class certification inspection.

10.     Prior to ABS carrying out these inspections, representatives of plaintiffs Tianjin Shipping and/or China Shipping met with ABS and provided ABS with a copy of the Memorandum of Agreement, and specifically pointed out to ABS the provision in the Memorandum of Agreement providing that "[t]he Classification Society shall be the sole arbitrator as to whether any damage found may constitute a condition/recommendation."

11.     On August 3, 2005, an underwater video inspection of the M/V NORSUL AMAZONAS was carried out by an ABS approved underwater engineer with the attendance of an ABS surveyor and representatives of the buyers and seller.

12.     As a result of the underwater video inspection, a "Certificate of Under Water Inspection", dated August 3, 2005, was issued by the ABS approved underwater engineer which stated, in relevant part:

> CONTEN On 3 August 2005, we carried out underwater video inspection at anchorage of jingtang with the attendance of the ABS surveyor and representatives of buyer and seller. Bulbous bow, bilge keel, sides, bottom, rudder, tail shaft, propeller and sea chests were all inspected.
> After inspection, the following conditions were found:
> 1. AA. the first blade of propeller a cavitation hole about 100mm length X 20mm depth.
>    BB. the second blade of propeller a cavitation hole about 40mm length X 20mm depth.
>    CC. the third blade of propeller a cavitation hole about 80mm length X 20mm depth.
> 2. at forward bilge of port side bent and deformation about 7.2m length were found.
> 3. after No 4 cargo hold, about 1m under bilge keel, 1300mm X 800mm X 30mm sunken at bottom.
> No other external abnormalities were found.
> please refer to the video disc for the details.

13.     Despite the findings in the Certificate of Under-Water Inspection, ABS issued a Statutory Survey Report No. SQ629545, which stated in relevant part:

> THIS IS TO CERTIFY that the undersigned surveyor(s) to this Bureau, did at the request of the Owners representative attend the Bulk Carrier NORSUL AMAZONAS, of Port Panama, Republic of Panama, Class Number 8603070, IMO Number 8126393, on 03-Aug-2005 as the vessel lay afloat, in order to carry out the inspection(s) noted below:

> Survey Location: Jingtang, Tianjin, P.R. China

| Report | Survey Description | Status | Outstanding | Checksheets |
|---|---|---|---|---|
| SQ629545_A | Ship Sale Survey - Underwater Inspection | Completed | No | No |

* * *

7

Statement/Observation

T-91   As specific requested by the Owners and as per signed MOA between the Sellers and Buyers, an Underwater Inspection has been carried out at this time by an ABS recognized In-Water Survey Company under the surveillance of the undersigned ABS Surveyor and witness by the Sellers/Buyers representative.

The vessel's hull, propeller, rudder and other visible underwater parts were examined by qualified diver equipped with closed-circuit television with two-way communication, all were found and/or reported in normal condition without any damage affect to the Condition of Class.

The Port bilge keel was noted for buckle downward starting from forward end FR. 197 with a length of 7200mm., the affected area was closely examined by the diver including all shell connection and no any fractures were found.

14.    The ABS Statutory Survey Report No. SQ629545 omitted any reference to the conditions found by ABS' approved underwater engineer and which were set forth on the "Certificate of Under Water Inspection."

15.    The conditions found by ABS' approved underwater engineer and which were set forth on the "Certificate of Under Water Inspection" but which were omitted from the ABS Statutory Survey Report No. SQ 629545, upon information and belief, constituted conditions and/or recommendations and/or deficiencies under ABS' Class Rules.

16.    Thereafter, on August 11, 2005, ABS issued a "Confirmation of Class Certificate" for the vessel "NORSUL AMAZONAS", which stated in part that "[t]here are no outstanding recommendations on our records."

17.    On August 27, 2005, ABS issued Report No. SQ635543 entitled "Statement of Fact – Running Tests of Main Engines and Shaft Generator."

8

18.     The purpose of the ABS Report No. SQ635543 was to certify that the main engines of the M/V NORSUL AMAZONAS were in normal condition and/or complied with ABS Class requirements and/or required conditions or recommendations to class.

19.     ABS Report No. SQ635543 was purportedly based on an inspection of the M/V NORSUL AMAZONAS conducted by an ABS surveyor, Mr. D.L. Jiang, on August 27, 2005, the same date that the report was issued.

20.     However, the records of Qingdao Station of Exit and Entry Frontier Inspection showed that the ABS surveyor, Mr. Dongali Jiang, did not board the vessel M/V NORSUL AMAZONAS until August 29, 2005, two (2) days after the date of the purported tests of the main engine and the date of ABS Report No. SQ635543.

21.     Therefore, upon information and belief, the ABS surveyor, Mr. Dongali Jiang, did not perform the survey and/or inspection that purported to form the basis of ABS Report No. SQ 635543.

22.     Had the ABS surveyor, Mr. Dongali Jiang, actually performed the survey and/or inspection that purported to form the basis of ABS Report No. SQ635543, ABS would have discovered conditions in existence aboard the M/V NORSUL AMAŽONAS, including problems with the vessel's main engines, that required conditions and/or deficiencies and/or recommendations to be noted to the vessel's class.

23.     On September 23, 2005, ABS issued a further "Confirmation of Class Certificate" for the vessel NORSUL AMAZONAS, which stated in part that "[t]here are no outstanding recommendations on our records."

24.     On September 27, 2005, ABS sent a correspondence directly to Plaintiff Tianjin Shipping stating, in part, that "[w]e confirm that report SQ635543 dated 27 August 2005 at Qingdao was issued by ABS."

9

25.    On the basis of, and in reliance upon, the ABS Reports Nos. SQ629545 and SQ635543 and the Confirmation of Class Certificates issued by ABS, plaintiffs lost the right to cancel the Memorandum of Agreement and agreed to and did in fact take delivery of the M/V NORSUL AMAZONAS on October 17, 2005, and pay the balance of the purchase price, as they were obligated to do under the Memorandum of Agreement.

26.    However, despite being obligated to accept delivery of the M/V NORSUL AMAZONAS under the Memorandum of Agreement, serious problems and/or damages to the vessel that should have been set forth as "conditions" or "recommendations" to the vessels' class in the various reports and certificates issued by ABS existed.

27.    Had ABS properly and with due care, skill and/or judgment set forth as "conditions" or "recommendations" to the various reports and certificates it issued the items set forth in the "Certificate of Under Water Inspection" and/or the problems with the vessel's main engines that would have been discovered had the ABS surveyor actually performed the inspection, plaintiffs would have exercised their right to cancel the purchase transaction and/or require the seller to rectify all such conditions or recommendations at seller's expense and/or demand a reduction in the purchase price of the vessel in the total amount required to properly and adequately repair all such conditions or recommendations.

28.    As a result of the actions and/or inactions of ABS, plaintiffs have incurred expenses in an amount in excess of $202,000.00 for repair of the M/V NORSUL AMAZONAS' main engine, hull and other parts of her structure which should have been identified by ABS as deficiencies, conditions and/or recommendations in one or more of ABS' reports and/or certificates.

29.    As a further result of the actions and/or inactions of ABS, plaintiffs were precluded from performing a five-year charter-party with Fujian Guohang Ocean Shipping

Co., Ltd., and plaintiffs were forced to enter into a less lucrative charter-party with Tangshan An Ping Shipping Co., Ltd. at a significantly reduced daily charter hire resulting in a total loss of charter hire for the five year period in the amount of U.S. $11,369,750.00.

30.    As a further result of the actions and/or inactions of ABS, plaintiffs were forced to breach their charter-party with Fujian Guohang Ocean Shipping Co., Ltd. and were and are subject to the indemnitees for breaching the charter-party in the amount of U.S. $500.00 x 365 days x 5 years for a total of U.S. $912,500.00.

31.    As a further result of the actions and/or inactions of ABS, plaintiffs took delivery of the M/V NORSUL AMAZONAS and on November 18, 2005, while on her second voyage after delivery to plaintiffs, the M/V NORSUL AMAZONAS collided with a wharf and a bridge crane in Quanzhou, China as a result of main engine failure.

32.    The owners of the wharf, Fujian Sanmei Co., Ltd. commenced a legal proceeding for arrest of the /V NORSUL AMAZONAS for security in the approximate amount of U.S. $2,000,000.00.

33.    Furthermore, Fujian Sanmei Co., Ltd. is seeking damages against plaintiffs as a result of the collision in an amount in excess of $660,000.00.

34.    Therefore, as a result of the wrongful actions and/or inactions of ABS, plaintiffs have incurred expenses associated with the proceedings brought by Fujian Sanmei Co., Ltd., for the arrest of the M/V NORSUL AMAZONAS and the posting of security, and my incur further liability and/or indebtedness to Fujian Sanmei Co., Ltd. as a result of the collision of the M/V NORSUL AMAZONAS with the wharf and bridge crane.

## AS AND FOR A FIRST CAUSE OF ACTION

35.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 34 of this Complaint with the same force and effect as if set forth herein at length.

36.    Defendant ABS was aware that the surveys it conducted of the M/V NORSUL AMAZONAS and/or the survey reports and/or certificates that it issued regarding the vessel M/V NORSUL AMAZONAS would be utilized in the sale of the vessel from Companhia de Navegacao Norsul to plaintiffs and that plaintiffs would rely on same in determining plaintiffs' rights and obligations under the Memorandum of Agreement.

37.    Defendant ABS was also aware of the contractual provision in the Memorandum of Agreement between Companhia de Navegacao Norsul and plaintiffs which provided that "[t]he Classification Society shall be the sole arbitrator as to whether any damage found may constitute a condition/recommendation", and ABS did not object to this role.

38.    As a result of the foregoing, ABS owed a duty to plaintiffs to use due care, skill and/or judgment in carrying out the relevant surveys and in issuing the relevant survey reports and certificates.

39.    ABS breached its duty to plaintiffs by failing to use due care, skill and/or judgment in conducting and/or carrying out the relevant surveys and/or in preparing and/or issuing survey reports and/or certificates containing inaccurate, incomplete, false and/or misleading information.

40.    ABS' negligence and/or its breach of its duty to use due care, skill and/or judgment caused and/or directly and proximately resulted in damage to plaintiffs in an amount in excess of U.S. $17,500,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

41.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 40 of this Complaint with the same force and effect as if set forth herein at length.

42.    Defendant ABS was aware that the surveys it conducted of the M/V NORSUL AMAZONAS and/or the survey reports and/or certificates that it issued regarding the vessel M/V NORSUL AMAZONAS would be utilized in the sale of the vessel from Companhia de Navegacao Norsul to plaintiffs and that plaintiffs would rely on same in determining plaintiffs' rights and obligations under the Memorandum of Agreement.

43.    Defendant ABS was also aware of the contractual provision in the Memorandum of Agreement between Companhia de Navegacao Norsul and plaintiffs which provided that "[t]he Classification Society shall be the sole arbitrator as to whether any damage found may constitute a condition/recommendation", and ABS did not object to this role.

44.    ABS, in the course of its profession, supplied false information in the survey reports and/or certificates for plaintiffs' guidance and/or benefit in their business transaction.

45.    ABS failed to exercise reasonable care in gathering the information.

46.    Plaintiffs Tianjin Shipping and China Shipping justifiably relied on the false information in a transaction that ABS intended to influence.

47.    As a result, plaintiffs Tianjin Shipping and China Shipping suffered pecuniary loss in an amount no less than $17,500,000.00.

48.    Plaintiffs Tianjin Shipping and China Shipping are members of a limited group for whose benefit and guidance ABS intended to supply the information and/or to whom ABS knew that the recipient of the information intended to supply it and/or whom ABS knew would receive the information.

WHEREFORE, plaintiffs Tianjin Development Area Chang Ming Shipping Co. Ltd. and China Shipping International Trading Co. Ltd. respectfully pray for judgment against defendant American Bureau of Shipping as follows:

A.    in favor of plaintiffs and against defendant on the First Cause of Action in an amount in excess of $17,500,000.00 as ultimately proved at trial;

B.    in favor of plaintiffs against defendant on the Second Cause of Action in an amount in excess of $17,500,000.00 as ultimately proved at trial;

C.    in favor of plaintiffs for such other and further relief that this Court may deem just and proper;

together with the costs and disbursements of this action.

14

Dated: New York, New York
       August 1, 2008

                              NICOLETTI HORNIG & SWEENEY
                              Attorneys for Plaintiff

                              By: _____
                              James F. Sweeney (JS-7745)
                              Wall Street Plaza
                              88 Pine Street, 7th Floor
                              New York, New York 10005-1801
                              (212) 220-3830
                              OUR FILE:  99000008 JFS

X:\Public Word Files\99\8\LEGAL\COMPLAINT.8.1.08.VAL.MM.doc